THE NORRISTOWN, &c., TURNPIKE COMPANY and Another *v.*
BURKET and Others.

INJUNCTION.—An injunction will lie to restrain a turnpike company from entering upon lands for the purpose of constructing its road, before compensation has been legally assessed and tendered. Page 57.

PLANK ROADS.—ASSESSMENT OF DAMAGES.—TITLE TO LANDS.—A proceeding before a justice of the peace for an assessment of damages, under the act

authorizing the construction of plank, macadamized and gravel roads, does not involve the title to real estate. Page 58.

SAME.—CONSTRUCTION OF STATUTE.—NOTICE.—In a proceeding for the assessment of damages under section 7 of the act authorizing the construction of plank roads, &c., (1 G. & H. 474,) if the owner of the land is an adult, and a resident of the county where the land is situated, he must be summoned to appear for trial before the justice within ten days; but if the owner be a minor, having a guardian who is a resident of the county, the summons must be served on the guardian at least ten days before the day of trial. Page 59.

SAME.—In such case, the act recognizes the guardian as the proper legal representative of the minor, and the guardian being properly summoned, no further notice to the ward is required. But if there be no guardian resident in the county upon whom process can be served, then notice must be given to the minor, whether a resident or non-resident of the county, by posting written notices of the time and place of trial in three of the most public places in the township where the land is situated. Page 60.

SAME.—Section 8, which requires notice to be posted in all cases where the owner of the land is a minor, construed in connection with section seven must be held to apply only to cases where the minor has no guardian resident in the county. Page 60.

SAME.—TRIAL BY JURY.—The provision in the plank road act for the assessment of damages in the first instance by viewers, to be appointed by the justice, is not in conflict with sec. 20, art. 1, of the constitution, which provides that "in all civil cases the right of trial by jury shall remain inviolate." On appeal to the Circuit Court the issue may be tried by a jury. Page 61.

APPEAL from the *Bartholomew* Circuit Court.

ELLIOTT, J.—This was a complaint for an injunction filed by *Marion Burket, Rachel M. Solomon*, wife of *Horace G. Solomon*, and *Nancy M. Burket*, infants, by their next friend, *Jacob Reed*, against the *Norristown, Hope and St. Louis Turnpike Company* and *Thomas A. Seigler*.

The complaint alleged, in substance, that the plaintiffs were the owners in fee of two-thirds of a certain tract of land, which is described, situated in *Bartholomew* county, as tenants in common with their mother, *Eliza Burket*, who was the owner of the remaining one-third; that the said turnpike company, by its board of directors, had surveyed and staked off the route or line of their said road, running from *Norristown, Shelby* county, in this State, to *Hope* and *St.*

*Louis* crossing in *Bartholomew* county, through the lands of the plaintiffs; that on the 12th day of *May*, 1864, the turnpike company filed their complaint, or notice, with *William D. Cook*, a justice of the peace in *Bartholomew* county, charging therein that the plaintiffs were the owners of said land, and that difficulty existed between the plaintiffs and the turnpike company about the right of way for the road through said lands, and requiring the justice to notify the plaintiffs' guardian, *Jacob Reed*, of the pendency of said notice or complaint, and to cause three competent jurors to be summoned to assess the damages occasioned to the plaintiffs by reason of the construction of the turnpike road through their lands; that the justice thereupon issued a summons which was duly served on said *Reed*, the plaintiffs' guardian, and also a *venire* for three disinterested persons to act as jurors to assess said damages, fixing the 27th of *May*, 1864, as the time for the assessment of damages; that the summons for the guardian and the *venire* for the jury were returned on the 27th of *May*, and three disinterested, competent jurors were thereupon empanneled and proceeded to assess the plaintiffs' damages, and did assess the same at the sum of $333 33, and returned said assessment in writing, in the form of a verdict, to said justice, upon which the justice rendered a judgment for the amount so assessed in favor of the plaintiffs against said turnpike company; that the company had let out, by contract, the building of said turnpike road through the land of the plaintiffs to the defendant *Thomas A. Seigler;* that said *Seigler* had actually commenced the excavation, grading and construction of said pike over and through the plaintiffs' land, and was ploughing up the soil, cutting down the timber in the line of the road, and constructing the same forty-five feet in width; that fifty rods of the line of the road ran through valuable timber, &c.; that the farm was arranged particularly for stock purposes, and is watered principally by a large spring on one part of the land, affording stock water for the entire season, and that the construction of said turnpike through the land

would cut off and prevent the convenient use of said water on a part of the land. The complaint alleged other inconveniences and injuries which would result from the construction of said turnpike through said land, amounting, as is alleged, in the aggregate to the sum of $1,000.

The complaint admits that the turnpike company had paid to the justice $333 33, the amount so awarded to the plaintiffs, but denies that they had received the same, and alleges that the assessment was illegal and void, and also charges that the company is insolvent, and prays an injunction, &c. A transcript of the proceedings before the justice of the peace, and of the papers filed in that proceeding, are made a part of the complaint for the injunction, by which it appears that *Reed*, the guardian, appeared before the justice, and that on the 23d day of *June* following he appealed the case to the Circuit Court, but that for some cause, orally shown to the court, the appeal was dismissed.

The defendant appeared in the Circuit Court and demurred to the complaint for an injunction, but the court overruled the demurrer, and the defendants then filed an answer in two paragraphs. 1. A general denial. 2. Alleging that the turnpike company filed with the justice the notice required by law; that said infants had a guardian residing in said county of *Bartholomew*, where the said land is situated; that a notice or summons was served on said guardian more than ten days before the trial, notifying him of the time and place thereof; "that the justice, before said trial and assessment of damages in the complaint mentioned, caused three notices to be stuck up of the time and place of appointing viewers, and that the infants, the plaintiffs herein, appeared at the appointment of said viewers, and at the time of the assessment, and defended the same."

The plaintiffs demurred to the second paragraph of the answer, and the court sustained the demurrer, to which the defendant excepted. On the final hearing the court found for the plaintiffs, and decreed a perpetual injunction against the defendants, enjoining them from entering upon

the plaintiffs' land for the purpose of making, constructing or using said turnpike road, under or by virtue of the assessment of damages referred to in said complaint.

The defendants appeal to this court. The question presented for our decision arises upon the rulings of the court in overruling the demurrer to the complaint, and in sustaining the demurrer to the second paragraph of the defendant's answer.

It is insisted by the appellants that even if the assessment of damages before the justice, as stated in the complaint, is void, the plaintiffs have an ample remedy by a suit for the trespass, and that therefore an injunction will not lie. The turnpike company, by the location and construction of the road over the plaintiffs' land, propose to make a permanent appropriation of the land occupied by the road to the use thereof. This can only be done, without the owner's consent, when the use to which it is appropriated is a public one. But the constitution of the State expressly prohibits the taking of private property for public use by a private corporation, unless just compensation therefor be first assessed and tendered. Art. 1, § 21. This provision of the constitution is a just and salutary one, and must be enforced. Its object is to protect the private property of the citizen from being taken or appropriated until just compensation is first assessed and tendered, and until that is done a preventive remedy should be afforded, which can only be given by injunction. The right to sue for the trespass is not adequate. Besides, in the present case, it is averred in the complaint that the company is wholly insolvent. This question was presented in *Sidener* v. *The Norristown, &c., Turnpike Company*, 23 Ind. 623. This court, after a careful consideration of the question, held that an injunction was a proper remedy, and we adhere to that ruling.

But the material question is, was the assessment of damages referred to in the complaint valid?

The proceedings for the assessment of the damages were instituted under the act authorizing the construction of

plank, macadamized and gravel roads. 1 G. & H. 474. It is insisted by the appellees that the proceedings before the justice were *coram non judice* and void, for the reason that they put in issue the title to real estate, and that therefore the justice of the peace before whom they were instituted had no jurisdiction. The application for the assessment of damages did not put in issue the title to the land. The company, claiming the right under its charter to take the right of way for its road-bed by paying therefor a just compensation, admitted the plaintiffs' title, and instituted these proceedings under the law to have the value ascertained. The cases to which we are referred in 11 Ind. 67, 363; 8 *id.* 132, 134, and 12 *id.* 349, 561, are not in point.

It is also urged by the appellees that the proceedings before the justice were void because the appellees, the infants, were not brought before the justice by notice, as provided by the act, and that notice to their regular guardian was not sufficient, and did not dispense with the necessity of notice to them. The solution of this question, independent of the averments in the answer, depends upon the construction that should be given to the 7th and 8th sections of the act referred to, which are as follows:

Sec. 7. "In all cases where any person through whose land said road shall run shall refuse to relinquish the same, or where a contract between the parties cannot be made for the land, it shall be lawful for such company to give notice to some justice of the peace in the county where such difficulty may occur, and that such facts do exist; and such justice shall thereupon summon the owner of such land to appear before him on a particular day, within ten days thereafter. In case of infants and insane persons, if there be a guardian resident of the county where the land is situated, he shall have at least ten days notice of the time and place of trial; and when there is no guardian notice shall be posted up in three of the most public places in the township where the land is situated at least three weeks prior to the day of trial, and in case of non-residents the same

notice shall be given as is required in the case of infants having no guardian. And shall also cause to be summoned three disinterested persons, and cause them to come before him, who, after being legally sworn as jurors faithfully and impartially to assess the damages, if any, shall proceed to hear the testimony and view the land, and after having taken into consideration the disadvantages the road may be to the same, report thereon in writing whether such person is entitled to damages or not, and if so, how much; which report shall be filed with such justice, who shall enter judgment thereon, unless for good cause shown, and in case either party show good cause why judgment should not be entered, the justice may grant a review of the same, either with or without costs. Provided, that either party may, at their option, appeal the same to the Circuit Court of the proper county, as in other cases," &c.

Sec. 8. "In all cases where the owner is a minor or an insane person, or shall reside out of the county where such land may be, such justice shall cause three notices to be stuck up of the time and place of appointing viewers, and if no person appears he may adjourn the trial for two weeks, at the end of which time he shall appoint a guardian *ad litem*, or committee, to act for such minor or insane person, as the case may require, in the suit aforesaid; but such appointment need not be made if the guardian at law, or the committee of the estate, appear to defend, and he shall proceed as in other cases, and on judgment rendered and the corporation complying therewith by the payment of costs and damages against it, the corporation shall be seized of the lands. Costs shall be awarded or allowed against either party at the discretion of the jury."

The proper construction of section seven, as we understand it, may be stated thus: If the owner of the land is an adult and a resident of the county where the land is situated, he must be summoned to appear within ten days for trial; but if the owner be a minor, but is represented by a guardian who is a resident of the county, the summons shall be served

on the guardian at least ten days before the day of trial. In such case the act recognizes the guardian as the proper legal representative of the minor, and the guardian being properly summoned, no further notice to the ward is required. But if there be no guardian resident of the county, on whom process can be served, then notice is given to the minor, whether a resident or non-resident of the county, by . posting written notices of the time and place of trial in three of the most public places in the township where the land is situated. Nor do we think that the eighth section was intended to provide for any other notice to a minor represented by a resident guardian, nor that, when carefully considered, its provisions conflict with those of section seven. The eighth section, it must be admitted, is loosely drawn. Its object was evidently to provide for a postponement of the trial for an additional period, in cases where no other notice was given than by posting written notices in three public places in the township where the land is situated and no person should appear, and for the appointment of a guardian *ad litem*, or committee, if the minor or insane person should be unrepresented by such, and for a final judgment and the effect thereof. It must be construed in connection with the previous section, and thus construed its provision requiring notices to be posted up in the township in all cases where the owner is a minor, has reference only to cases where such minor has no guardian resident of the county.

It is not our duty to vindicate the policy of the law, but to expound and enforce it as we find it. But we may remark that in this provision of the statute, as we have construed it, we see nothing to condemn. Although, under our practice, in most cases where minors are defendants, process is served on them personally, and not on their guardian, yet the minor cannot appear by attorney, but must be represented either by his proper guardian, or by a guardian *ad litem* appointed by the court. The "act touching the relation of guardian and ward," makes it the duty

of the guardian to appear for and defend, or cause to be defended, all suits against his ward; and it seems evident that the rights and interests of the minor are quite as well, if not better, protected by the service of the process on the guardian, whose duty it is under the law to appear and protect them, and who is bound to the discharge of that duty by bond as well as by his oath, as they would be by serving the minor in person, and then intrusting his defense to the management of an indifferent and irresponsible guardian *ad litem.* Here it appears that a summons was duly served on the guardian more than ten days before the day of trial, and that he appeared to and defended the case. This, we think, was all the statute required.

But it is contended by the appellees, in support of the judgment of the Circuit Court, that the provisions of the act under which the damages were assessed are unconstitutional and therefore void, because they do not provide for a trial by jury, in the assessment before the justice.

The present constitution of this State provides that, " In all civil cases the right of trial by jury shall remain inviolate." This provision is substantially copied from the former constitution, which, so far as it related to civil cases, was as follows: " That in all civil cases, where the value in controversy shall exceed the sum of twenty dollars," &c., "the right of trial by jury shall remain inviolate."

It will be observed that there is nothing in the changed phraseology of the present constitution from which an inference can be drawn that it was intended thereby to change the rule as to the right of trial by jury in civil cases, from what it was under the previous constitution, at least where the value in controversy exceeds twenty dollars. What then is the meaning of the term "civil case," as used in that provision of the constitution? It certainly does not include every case or legal proceeding not criminal. The right of jury trial existed at common law, before the adoption of either of the constitutions of this State, and yet a large number of causes, known as suits in chancery, were

triable by the chancellor or court alone, without the right to demand a jury, and such continued to be the rule in this State during the whole period under our first constitution, and until the adoption of our present system and code of practice. And yet these were civil cases, in the general sense of that term, as contradistinguished from criminal, and cases, too, often involving a very large amount in value, of property both real and personal, yet they were never regarded as of that class of civil cases in which the right of trial by jury should *remain* inviolate under the constitution. Indeed, in that class of cases the right never existed. In *The Lake Erie, &c., Railroad Co.* v. *Heath,* 9 Ind. 558, the court in discussing this question, in an opinion pronounced by PERKINS, J., said: "Not every case which is not a criminal is a civil one. 'Civil case' had a definition, a meaning at common law, when the early constitutions of this country were formed; and it has been held that the term was used in those constitutions in the common law sense." See the cases referred to in the opinion. "It may be fairly argued that the term should be construed, in our constitution, to embrace such as were treated as civil cases in this State when the constitution was adopted; and such has been the rule acted upon in some of the states. See Sedg. on Stat. 542. But this rule would not extend the meaning of the term so as to embrace legal proceedings in all cases except criminal. It has not been the practice in this State to try chancery causes, nor to assess damages in the laying out of highways, by jury (*Kemp* v. *Smith,* 7 Ind. 471); nor to try contested elections by that tribunal. Other examples might be named."

The mode provided by our laws since the organization of the State, both under the old constitution and the present one, for the assessment of damages for property taken for public works, whether constructed by the State or by private corporations, has been almost uniformly by commissioners, arbitrators, viewers or appraisers, who have been authorized to determine the question summarily, whilst the

rights of both parties have been fully protected by allowing an appeal to a proper judicial tribunal, where the question, if desired, might be tried by a jury. Such has been the uniform practice in the laying out and changing of public highways, and we are not aware that the constitutionality of the road laws has ever been doubted, because a jury trial was not provided for before the county boards. The state, in virtue of the right of *eminent domain,* is authorized to take private property for the public use. This right has been granted to private corporations engaged in the construction of public highways. The right of the turnpike company to take and appropriate so much of the plaintiffs' land as was necessary for the road bed is granted by the charter—the law under which the corporation is organized—but the constitution of the State, whilst it authorizes the land to be thus taken for the public use, without the owners' consent, forbids that it shall be so taken until its value shall be assessed and tendered to the owners. The company cannot pay or tender the amount until it is assessed or ascertained. How and by whom shall the assessment be made? It is not an ordinary controversy between the parties, in which, by the usual and long established forms of action, the courts are always open to the party feeling himself aggrieved. It does not present itself as an ordinary "civil case," to be litigated in the ordinary mode, but requires the interposition of the law making power, to provide a proper mode of making the assessment. We think the provisions of the act under consideration neither unjust nor inappropriate as an initiatory step in the proceeding, which may or may not be final, at the option of the parties. Either party, if not satisfied with the amount assessed, may appeal to the Circuit Court, where the question, if desired by either, may be tried by a jury. It is true that the act referred to provides for the appointment of new appraisers, or viewers, on appeal in the Circuit Court, but it has been held that on appeal, in such cases, either party may demand a trial by jury. *The Lake Erie,*

*&c.*, *R. R. Co.*, v. *Heath*, 9 Ind. 558; *Piper* v. *The Connersville and Liberty Turnpike Co.*, 12 Ind. 400.

We do not think the provisions of the act under consideration are in conflict with the constitution of the State.

It is insisted that the injunction should be sustained upon the ground that the constitution forbids the property being taken until *just* compensation is assessed and tendered; that the amount assessed and paid to the justice in this case is only $333 33, whilst it is averred in the complaint that the plaintiffs will be injured by the appropriation in the sum of at least $1,000, and hence the amount so assessed is not *just*. The precise amount of damages resulting in such a case is, in its very nature, indefinite and uncertain. It is a question about which a wide difference of opinion may honestly exist. The statute requires that disinterested men, acting under the obligation of an oath, after hearing the evidence and viewing the premises, shall determine the question. Such was the mode of assessment in this case. No fraud or misconduct is charged against the persons who made the assessment, and as no appeal was prosecuted from their decision, the presumption is that it was correct, and like the verdict of a jury, or the finding and judgment of the court, so long as it remains in force, it must be deemed to be final and conclusive.

The judgment of the Circuit Court is reversed, with costs, and the cause remanded, with instructions to that court to dissolve the injunction, and sustain the demurrer to the complaint.

*S. Stansifer*, *F. Winter*, *R. Hill* and *J. M. Rogers*, for appellants.

*F. T. Hord*, *W. W. Herod*, and *W. Herod*, for appellees.