STATE OF MISSOURI EX REL. EVENS & HOWARD FIRE BRICK COMPANY *v*. GEORGE W. LUBKE ET AL., Respondents.

February 12, 1884.

1. EMINENT DOMAIN — CONDEMNATION OF RIGHT OF WAY. — A corporation, in the exercise of the right of eminent domain, can not take possession of the condemned land until the damages assessed have been paid to the owner or into court for him.

2. —— PRACTICE. — Where the amount awarded by the commissioners has been paid into court, it is the duty of the court, on application of the land-owner, to direct the clerk to pay the same to him.

3. —— INJUNCTION. — An injunction to restrain the clerk from paying the assessed fund to the land-owner will not lie after the corporation has taken possession of the condemned property.

4. —— An admission by the corporation that it has taken and holds possession of the land under the award and the payment thereof is a waiver of all errors in the proceedings up to that point.

5. —— A corporation, having paid the amount of the award into court, can not claim that it was paid in as a pledge or as security and not as an absolute payment.

6. —— CONSTITUTIONAL LAW. — The constitutional provision that property rights shall not be divested until the compensation is paid to the owner or into court for him is self-enforcing and repeals all statutes in conflict with it.

7. PRACTICE — APPEALS. — An appeal improvidently granted is valid unti. the order of appeal is properly vacated, and can not be disregarded in a collateral proceeding.

8. MANDAMUS. — *Mandamus* will not be issued to enforce a legal right when other adequate legal remedies are available.

9. —— *Mandamus* will not lie to compel the performance of an order from which an appeal has been improvidently granted, which appeal the aggrieved party is entitled to have dismissed on motion.

APPLICATION for *Mandamus*.

*Petition dismissed.*

DYER, LEE & ELLIS, for the relator: The payment of the award under the statute is an actual payment to the owner when it is paid into court for his use. — Cooley Const. Lim. 702; *Chambers* v. *Railroad*, 10 Am. & Eng. R. Y. Cas. 376. And he may compel its payment to him by the clerk by *mandamus.* — *Van Norman* v. *Jackson*, 45 Mich. 204; *Virginia* v. *Rivers*, 100 U. S. 323; *Freemont* v. *Crippen*, 10 Cal. 211; High on Mandamus, sect. 17.

NOBLE & ORRICK, for the respondent: The payment into court is a deposit, and pending exceptions to the award the company may proceed to build the road, the fund to remain in court. — Rev. Stats., sect. 896; *The State* v. *Dickson*, 3 Mo. App. 467. *Mandamus* does not lie to compel the payment to the land-owner pending an appeal. High on Mandamus, sects. 156, 176, 177; *The State* v. *Engelman*, 45 Mo. 27.

THOMPSON, J., delivered the opinion of the court.

This is an original application for a *mandamus* against one of the judges of the circuit court and the clerk thereof to compel the judge to order, and the clerk to make, payment to the relator of the sum of $50,000, which was deposited with the clerk by the St. Louis and San Francisco Railway Company in a proceeding by such company to condemn certain land of the relator for a right of way of such company, as hereafter stated. The questions which we have to consider arise on a demurrer to the return, and a motion for judgment on the return, made by the relator. The respondents, the judge and clerk of the circuit court, in their return exhibit to the court a transcript of the entire proceedings in the condemnation case; and, by a stip-

ulation of the parties, this transcript is to be considered as a part of the return; so that we have on this demurrer and and motion for judgment, the case before us for disposition on its merits.

The facts thus disclosed are as follows: On the 8th of June, 1883, the St. Louis and San Francisco Railway Company, having, under various franchises of which it had become the proprietor, the right to build a railway between the Mississippi River in St. Louis and the town of Pacific, in Franklin County, filed its petition in the circuit court, setting forth that it was necessary, in constructing such road, to appropriate a certain parcel of land, the property of this relator, which is a manufacturing corporation, one hundred feet in width, and containing two and thirty-three one-hundreth acres, within the city of St. Louis, and praying for the appointment of commissioners. Summons having been served upon this relator, and upon Austin R. Moore, trustee, the court on July 6, 1883, appointed Howard A. Blossom, Thos. W. McManus, and Richard D. Lancaster, as such commissioners. These commissioners, having taken the oath prescribed by law, thereafter, on the 22d day of August, 1883, filed two reports, a majority report and a minority report. A majority of the commissioners, Mr. Blossom and Mr. McManus, assessed the value of the land of this relator, which the railway company sought to appropriate, at the sum of $50,000. The other commissioner, Mr. Lancaster, assessed the same at the sum of $4,000. Thereafter, on the 23d day of August, 1883, the clerk issued a written notice to this relator, and also to Austin R. Moore, trustee, of the filing of this report. This notice was, on the 27th day of August, 1883, served by the sheriff upon this relator, and also upon Austin R. Moore, trustee, and return thereof was, on the 4th day of September, 1883, made to the court. Thereafter, on the 30th day of August, 1883 the railway company, according to the recitals in the bill, of exceptions, "paid to Charles F. Vogel, clerk of the

court, the sum of $75,900, $50,000 thereof being the amount of the award by a majority of the commissioners, as damages assessed in favor of the Evens & Howard Fire Brick Company." The remaining $25,900 was the amount assessed in favor of the Missouri Fire Brick and Clay Company, another land-owner in the same proceeding. On the same day on which it paid this sum of money into the hands of the clerk, the railway company filed exceptions to the report of the majority of the commissioners, the grounds of which need not be stated, further than to say that they present for determination certain questions both of fact and law. Thereafter, on the 17th of September, 1883, the railway company filed a motion asking the court to hear and determine its exceptions to the report of the commissioners, before such report should be confirmed, or before any order to pay over such sum of $50,000 to this relator should be made.

In connection with this motion, the bill of exceptions in the record in the condemnation proceedings contains the following recitals : "And on the same day said motion came on to be heard, and the plaintiff, in open court, admitted that since the making by it to the clerk of this court of the payment aforesaid, and in virtue of the payment for the defendant, the Evens & Howard Fire Brick Company, and the proceedings in this cause, it had taken possession of the property of the Evens & Howard Fire Brick Company described in plaintiff's petition, and in said report of commissioners, and that it was now in actual possession thereof. Whereupon the court then and there overruled said motion ; to which ruling of the court the said plaintiff then and there excepted at the time. And thereupon the court, of its own motion, upon the admission of plaintiff aforesaid, struck out said exceptions of plaintiff, to which ruling of the court in striking out said exceptions, the plaintiff then and there excepted at the time."

. Thereupon, on the same day, the Evens & Howard Fire Brick Company filed a motion, supported by affidavit, in the following language : " Now comes the Evens & Howard Fire Brick Company, defendant herein, and states to the court, that the amount of damages awarded this defendant by the commissioners herein, namely, the sum of fifty thousand dollars, has been paid into said court by the St. Louis and San Francisco Railway Company for said fire brick company. That thereupon said railway company entered upon, and are now in the possession of its right of way upon the land of said fire brick company, as prayed for in its petition filed herein. That this defendant has demanded the said sum of money from the clerk of this court, and payment thereof has been refused by said clerk ; that under the constitution and laws of this state, this defendant is entitled to be paid said sum. Wherefore it is asked that the court make an order that said money be forthwith paid this defendant." " The court, thereupon, against the objection of the plaintiff (the railway company), and upon its admission that it had taken possession of defendant's property, on said day sustained the said motion ; to which ruling of the court, the plaintiff (the railway company) then and there at the time excepted."

On the same day, the railway company filed a motion to set aside the order on the clerk to pay over to this relator, the Evens & Howard Fire Brick Company, this award of $50,000, and for a rehearing of said motion, for various reasons assigned, which need not be here set out. This motion came on to be heard on the same day, and was by the court overruled ; to which ruling of the court the railway company then and there excepted. On the following day, September 18, 1883, the railway company filed a motion asking the court " to set aside this order herein on Charles F. Vogel, clerk of this court, to pay over to said Evens & Howard Fire Brick Company the sum of

$50,000, being the amount awarded to said last named company by Howard A. Blossom and Thomas W. McManus, commissioners, as per their report filed in this cause, and to set aside the order striking out plaintiff's exceptions to the report of the commissioners herein, and to grant a rehearing in said cause," for various reasons assigned, which need not here be set out. This motion on the same day came on to be heard by the court, and was overruled, the railway company duly excepting. On the following day, September 19, 1883, a bill of exceptions was signed, embracing the exceptions of the railway company to these various rulings against it, as already stated, which bill of exceptions is embodied in the record in the condemnation proceedings, which record, as already stated, is exhibited by the respondents as a part of their return, and is, by a stipulation of the parties, to be considered by this court as a part of said return.

Thereafter, the railway company prayed for an appeal "from the judgment and decision" in said cause, filing the statutory affidavit therefor, and the court granted the same. The railway company executed an appeal bond in the penal sum of $110,000.

We have been thus particular in setting out the facts and dates in the condemnation proceeding, using in several particulars the exact language of the record of that proceeding, in order that there may be no mistake or doubt as to the facts upon which our judgment in this *mandamus* proceeding is invoked.

It is important, next, to consider the state of the written law applicable to the condemnation of land by railroad companies. By sections 764 and 766 of the Revised Statutes, any number of persons, not less than five, may organize themselves into a railroad corporation, by complying with certain formalities and paying a certain license tax, without asking or obtaining the consent of the legislature or of any other public authority of the state. By the

constitution of this state " any railroad corporation or association, organized for the purpose, shall have the right to construct and operate a railroad between any points within this state, and to connect at the state line with railroads of other states." Const. Mo., Art. XII., sect. 13. This provision has been re-enacted by the legislature word for word. Rev. Stats., sect. 819. By section 765, every railroad company is empowered to lay out its road, not exceeding one hundred feet in width, and to construct the same ; and, by section 892, to condemn lands for such right of way, when it can not agree with the owner thereof as to the proper compensation to be made. It thus appears that any number of persons, not less than five, who have, or think they have, money enough to build a railroad, or the means of raising money enough for this purpose, are permitted by our laws to organize themselves into a railroad company, and locate and build a railroad where they please, without first obtaining permission from any of the public authorities of the state. They are permitted to locate their railroad where they will, and to appropriate for this purpose the lands of whomsoever they will, upon their own view of the public utility of the railroad which they propose to build. They can do all this ; and if the contention put forth in behalf of this company is well founded, they can take the land at the beginning, and pay the damages at the end, of a lawsuit which may not terminate for years.

By section 21 of article II. (bill of rights) of the constitution of Missouri, " private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law ; and, until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for

railroad tracks without consent of the owner thereof, shall remain in such owner, subject to the use for which it is taken.''

In our constitution of 1865 the provision upon this subject stood simply thus : '' No private property ought to be taken or applied to public use, without just compensation.'' Const. 1865, 'Art. I., sect. 16. The provision on this subject in our constitution of 1820 was couched in the same language. Const. 1820, Art. XIII., sect. 7.

With the provision of our present bill of rights, as above quoted, in force, the legislature which framed our present Revised Statutes, in the article of the chapter on corporations which relates to the '' appropriation and valuation of lands taken for the telegraph, telephone, gravel and plank, or railroad purposes,'' inserted the following two sections, the former being an amendment of a section of the general statutes, and the latter an amendment of a statute passed in 1873 : '' The court, or judge thereof in vacation, on being satisfied that due notice of the pendency of the petition has been given, shall appoint three disinterested commissioners, who shall be freeholders, resident of the county in which the real estate or a part thereof is situated, to assess the damages which the owners may severally sustain by reason of such appropriation ; who, after having viewed the property, shall forthwith return, under oath, such assessment of damages to the clerk of such court, setting forth the amount of damages, and should more than one owner be included in the petition, then the damages allowed each shall be stated separately, together with a specific description of the property for which such damages are assessed, and the clerk shall file said report and record the same in the order book of the court ; and thereupon such company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed ; and, on making such payment, it shall be lawful for such company to hold the inter-

est in the property so appropriated for the uses aforesaid; and, upon failure to pay the assessment aforesaid, the court may, upon motion and notice by the party entitled to such damages, enforce the payment of the same by execution, unless the said company shall, within ten days from the return of such assessment, elect to abandon the proposed appropriation of any parcel of land, by an instrument in writing to that effect, to be filed with the clerk of said court, and entered on the minutes of the court, and as to so much as is thus abandoned, the assessment of damages shall be void.'' Rev. Stats., sect. 894.

'' Upon the filing of such report of said commissioners, the clerk of the court wherein the same is filed, shall duly notify the party whose property is affected, of the filing thereof; and the report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of the notice aforesaid; and the court shall make such order therein as right and justice may require, and may order a new appraisement upon good cause shown. Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages; but, notwithstanding such exceptions, such company may proceed to erect said telephone or telegraph line, or construct said road or railroad, and any subsequent proceedings shall only affect the amount of compensation to be allowed. In all cases arising under the provisions of this article, the report of commissioners, when signed by a majority of them, shall be taken and considered as the report of all.'' Rev. Stats., sect. 896.

The meaning of these two sections, when read together, is not very plain. The former conforms entirely with the constitutional provision, by providing for payment of the damages awarded to the clerk of the court, '' for the party in whose favor such damages have been assessed,'' and by

giving such party a right to an execution for such damages in case the same are not paid, unless the company elect in writing not to take the land. The payment here provided is an unconditional payment to the clerk for the land-owner, and satisfies the requirements of the constitution. If the remaining portion of the section means that the railway company may take the land, and remit the land-owner to an execution against them for the recovery of his damages, it does not satisfy the requirements of the constitution ; and the land-owner would be entitled to an injunction to restrain such taking until the payment of the damages assessed. *Redman* v. *Phila.*, etc., *R. Co.*, 33 N. J. Eq. 165 ; *Norristown Tp. Co.* v. *Birkett*, 26 Ind. 53 ; *Evansville*, etc., *R. Co.* v. *Grady*, 6 Bush, 144.

Then, as to the meaning of section 896 ; if this section means that, after having acquired the right to enter upon the land by paying into the hands of the clerk the damages awarded " for the party in whose favor such damages have been assessed," the company may, by filing exceptions to the award, arrest the payment of such damages by the clerk to the land-owner, tie the money up as a fund in court, and, at the same time take the land, we have no hesitation in saying that it is unconstitutional. This is clearly so, unless some meaning can be discovered for the terms of the constitution, which is contrary to what the words imply. No such meaning can be discovered. The language is so plain that there is no room for interpretation. The meaning is that the corporation shall not disturb the property or divest the proprietary rights of the owner, until the compensation, ascertained by a jury, or by a board of commissioners, shall either be paid to the owner, or be paid into court for the owner. The clause permitting payment into court for the owner was evidently intended as a provision for cases where the owner might refuse payment when tendered, or might be unknown, or not *sui juris.* Its meaning can not, by any sophistry, be frittered away so

as to allow the corporation, by making a mere deposit in court of the sum awarded, to take the land and afterwards to litigate with the land-owner the question of the amount of his compensation, keeping him out of his possession, under no obligation to pay him rents or profits pending the litigation, and, by a protracted lawsuit with delays and appeals, harassing him into compliance with its terms. The difference between payment and a mere deposit in court by way of security *pendente lite* is vital. If the deposit satisfies the requirements of the constitution, the making of it exonerates the railway company ; for they have done all that the law requires them to do as a condition precedent to the taking. Thenceforth the money lies in court, not at their risk, but at the risk of the land-owner. The law affords no provision for investing it so that it will yield him any profit. The bank in which it is deposited by the clerk may become insolvent ; the clerk himself may embezzle it, and his sureties may not be able to make it good. We are not saying this with reference to this case. There is no reason to anticipate such a thing in this case ; but we are speaking with reference to a general rule. And thus it may happen that the land-owner loses his land irrevocably as soon as the money is deposited, that he gets no compensation for the loss of its rents and profits pending the determination of the controversy, and that he may lose entirely the principal sum deposited for his security. This is not payment, either to the land-owner or to the clerk of the court for his use. It is not what the constitution says, nor is it what the constitution intends. The constitution means that if the railroad company is not satisfied with the award of damages which the commissioners have made, and desires to except to the same, it must delay taking the land until the amount of damages to be paid is finally settled. It can not take the land and give the land-owner in exchange for it a lawsuit which may not terminate for years.

Nor are we to consider any supposed public inconvenience

which may happen in consequence of the company being thus obliged of delay the building of its road. Questions of convenience can never be considered by a court of justice in disregard to the positive law. It was said by an eminent judge, that " if a railroad can not be made straight without violating the law, it must be made crooked, or not at all." *Com.* v. *Erie, etc., R. Co.,* 27 Pa. St. 339, 359, per Black, C. J. It was said by another eminent equity judge : " The company may come to terms with him (the land-owner) if they can ; but if they can not, and are unable to comply with the act without closing the railroad, much as such a result may be to be regretted, they must close it." *Attorney-General* v. *Mid-Kent R. Co.,* L. R. 3 Ch. 100, per Lord Cairns, L. J. See, also, *Attorney-General* v. *Great Northern R. Co.,* 4 De Gex & S. 75.

Nor can the usages of railroad-building be for a moment considered as altering the law ; though there was a time in the era of railroad-building when such enterprises were so much favored by the courts that their promoters and managers seemed to think that the contrary was true. In a case decided in England during that period, Lord Langdale, M. R., felt called upon to make the following observations : " I am surprised at the defendants by their affidavits telling the court that the course they have adopted is in accordance with the usages of railway companies, and that the like has been done by such companies on other occasions. To introduce such statements into an affidavit for the purpose of influencing the judgment of the court in a matter of this kind is a gratuitous absurdity ; for an injustice is not to be tolerated in any case merely because such things have been done by other persons on former occasions." *Rankin* v. *East and West India Dock R. Co.,* 12 Beav. 298, 306.

We shall not consider a large number of decisions which have been cited, nominally on the part of these respondents, but really on behalf of the railway company, to show that the land may be taken before payment is actually made.

We may concede that it has been held, in many jurisdictions, that payment of compensation need not actually precede the taking of the land, but that it is sufficient that compensation be actually secured by a deposit of money in court. We may also concede that such was the law in this state prior to the adoption of our present constitution. But section 21 of our bill of rights has changed all this. This provision, like every other provision of our bill of rights, is self-enforcing. It reaches to a matter which is excepted out of the ordinary powers of government. It repeals by its own vigor, every previously existing statutory provision, and renders absolutely void every subsequent legislative enactment, in conflict with it. That it has this effect as a repealing statute, is beyond all possible doubt; but out of abundant caution, the framers of our present constitution inserted the following provision in section 1 of the schedule : " The provisions of all laws which are inconsistent with this constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions of this constitution as require legislation to enforce them, shall remain in force until the first day of July, one thousand eight hundred and seventy-seven, unless sooner amended or repealed by the General Assembly." Similar constitutional provisions to section 21 of our bill of rights, exist in several other states of the union ; and, where the question has arisen under these constitutions, the courts have not hesitated to hold that a statute permitting a corporation to take the land before payment has been made is unconstitutional and void. *Redman* v. *Phila., etc., R. Co.*, 33 N. J. Eq.165 ; *Chambers* v. *Cincinnati R. Co.*, 10 Am. & Eng. Ry. Cas. 376 (Sup. Ct. Ga. 1883) ; *Pearson* v. *Johnson*, 54 Miss. 259. We are, therefore, clear of doubt that if section 896 of the Revised Statutes allows the corporation to take possession of the land for the purpose of constructing its railroad, before making payment of the compensation awarded to the land-owner, or into

court for his use, it is, to this extent, unconstitutional and void.

Such being the right secured to the land-owner by the paramount law of the state, it remains to consider what are the rights of this relator in respect of the award of $50,000, which the St. Louis and San Francisco Railway Company paid into court, as already stated. We may notice here that the point is made, nominally on behalf of the respondents, but really on behalf of the railway company, that the return does not show that the railway company has taken full possession of the land. This is a mistake. The return does show this fact. The record of the condemnation proceeding is exhibited by the respondents as a part of their return, and is to be considered as such by this court, by a stipulation of the parties. This return recites that " the plaintiff [meaning the St. Louis and San Francisco Railway Company] in open court admitted, that since the making by it to the clerk of this court of the payments aforesaid, and in virtue of the payment for defendant, the Evens & Howard Fire Brick Company, and the proceedings in this cause, it had taken possession of the property of the Evens & Howard Fire Brick Company, described in the plaintiff 's petition and in said report of the commissioners, and that it was now in actual possession thereof." Here was a solemn admission of record that the railway company had taken possession of the property which it sought to condemn ; that it had taken possession of it since the payment of the award of the commissioners by it into the hands of the clerk ; and further, that it had taken possession of it in virtue of such payment and of the condemnation proceedings. After making this admission, I am unable to understand any principle upon which the railway company had a standing in court to object to the money being paid by the clerk to the owners of the land. Their admission is that the money was placed in the hands of the clerk, not as a mere deposit or security, but

as payment; and that, in virtue of such payment, they have taken possession of the land and retain possession of it; and yet, they say that the clerk of the court, the statutory agent of the land-owner to whom they paid the award for the land-owner's use, shall not be allowed to pay it over to the land-owner, to whom it belongs. After making this payment, and making it as a payment, and making a solemn admission of record that they have made it as a payment, and that they have taken the land for which they have thus paid, they have no further concern with the disposition which the court and the clerk may make of the money, which they have thus voluntarily paid in order to secure a right which the payment has given them, and which right the payment has secured to them. They have no more concern with it than a party has who files a petition asking that certain other parties be required to interplead for a fund in his possession, which he thereupon pays into court, with the award which the court may make of the fund as between the interpleading parties. Was it ever heard that a party thus filing a bill of interpleader could object to the decree of the court, or appeal from it, on the ground that it awarded the fund to A, whereas it should have awarded it to B? It is an universal maxim of procedure that consent is a release of errors. A party can not appeal from a judgment of non-suit which he has voluntarily taken (*Louisiana Plank Road Co.* v. *Mitchell*, 20 Mo. 432; *Poe* v. *Dominic*, 46 Mo. 113); nor from a judgment in his own favor (*Kinealy* v. *Macklin*, 67 Mo. 95, 99); nor can a party, after accepting the fruits of a judgment so far as it works in his favor, appeal from it. *Cassell* v. *Fagin*, 11 Mo. 207; *Robards* v. *Lamb*, 76 Mo. 192. Such a person is not aggrieved by the judgment, within the meaning of the statute giving the right of appeal from judgments of the circuit court. Rev. Stats., sect. 3710. I take it that this is in pursuance of an universal maxim of justice, which is to the effect that a party can not accept the fruits of the act of a

third party, be that an official act, like the rendition of a judgment, or a private act, like the act of an agent or of a person claiming to be an agent, and then repudiate and endeavor to invalidate the act itself. He can not sever the act in this way. He can not make it valid in part and void in part; valid in so far as it works in his favor, and void in so far as it works against him. Before he can avoid it, he must restore what he has obtained under it. Assuming that the railway company in this case could, by restoring the land to this relator, which it had taken in virtue of its payment of the award into court, have so far placed itself *rectus in curiâ* as to be entitled to question the order of the court disposing of the award, or to appeal therefrom, it does not appear that it has ever done this or offered to do it.

I, therefore, entertain no doubt, that when the railway company came into court and admitted that they had taken the land described in the petition and in the report of the commissioners in virtue of the payment which they had made to the clerk of the sum of $50,000 awarded by the commissioners, they made an admission which operated as a release of any errors which may have been committed by the commissioners in making their award, as an adoption of the report of such commissioners, and as a complete estoppel against them from thereafter making any objections to such report. When they paid the money and took the land, they accepted and received, to the fullest extent, the fruits of the award, and thereafter they could not complain that it was excessive. They could not accept the full benefit of it so far as it worked in their favor, and except to it so far as it worked against them. It was in the nature of a judgment in so far that it was not divisible. Moreover, since, by the terms of section 21 of the bill of rights, the right to take the land depended wholly upon the precedent fact of payment, they could not, after having taken the land, be heard to say, and they can not now be heard to say, that the money was not placed in the hands of the

court as a payment, but as a security merely. They could not, in the face of the constitution, take possession of the land merely by securing payment. No statute has been pointed out to us which authorizes them to deposit the money awarded in the hands of the clerk merely as a security *pendente lite*. Section 894 of the Revised Statutes provides for payment, not for a deposit, and gives the land-owner the right to an execution in case payment is not made; while section 896 says nothing about such a deposit. The provision of section 894 follows and conforms to section 21 of the bill of rights, already quoted; and that, as we have already pointed out, contains no provision for the making of such a deposit as a security, but requires it to be made as a payment to the land-owner, as a condition precedent to the right of the corporation to take the land. This, then, was the only provision under which the deposit of the money with the clerk could have been made; and, having made the deposit under this provision, which says that it shall be payment to the clerk for the use of the land-owner, and having themselves treated it as payment by taking and retaining full possession of the land, and having thereafter come into court and solemnly admitted of record, that since the making of such payment and in virtue of such payment, it had taken possession of the land, — I am unable to understand upon what principle they can be heard to say that it was not made as payment, or on what principle they can be permitted, after getting the land in virtue of such payment according to their solemn admission, to change front, and ask the court to treat it not as a payment, but as a mere deposit for security.

I do not see how these propositions could be made plainer by illustration or by authority. It may be well, however, to notice a decision of the supreme court of Ohio, to which we have been cited, which involves the construction of a statute very similar in its terms to section 21 of our bill of rights. This statute, under which proceedings to condemn

land for railways take place before a probate judge, pro-
vides that the judge shall enter the verdict of the jury upon
the journal; that unless, after cause shown, the court shall
grant a new trial, the judge shall render judgment on the
verdict for the amount therefor; that the judgment may
be enforced by execution; and that, upon payment by the
corporation within thirty days to the party owning the
property, or into court for his use, the judgment shall have
the effect that the corporation shall hold the property for
the purposes for which it was appropriated.   In a proceed-
ing under this statute, the probate judge rendered a judg-
ment in favor of the land-owner in conformity with the
verdict of the jury.   The company moved for a new trial;
the motion was overruled, and an exception taken by the
company.   The company then filed its petition in error to
remove the cause to the court of common pleas.   At the
same time it paid into court the sum awarded by the ver-
dict and judgment, and took possession of the land.   The
common pleas affirmed the judgment of the probate court,
and the company filed its petition in error in the district
court, which, at the time of the decision of the supreme
court about to be stated, was still pending therein.   Imme-
diately the land-owner demanded of the probate judge the
money which had been paid into court under the judgment.
The probate judge declined to pay this, on the ground that
the writ of error was a *supersedeas* of the judgment.   Be-
cause of this refusal the land-owner brought an action
against the judge on his official bond, which was conditioned
to pay over all moneys that might come into his hands as
probate judge.   It was held that the probate judge was
liable in this action.   The court said:   "It was evidently
contemplated by the section that the judgment should have
the force of a judgment at law.   The amount thereof may
be collected by execution, or be paid into court for the
' use ' of the owner of the property.   In the absence of any
provision to the contrary, it is clear that, when the money

was so paid into court upon the judgment, it was the duty of the probate judge to pay it over to the party entitled thereto on demand.  *  *  *  A contrary construction would be open to the serious objection that the owner might be deprived of the use of his property during the pendency of proceedings in error, which may be for many years, without compensation being made, or secured to be made; for. if the judgment should be affirmed, the corporation could not be compelled, in the absence of any provision of law therefor, to pay interest on a judgment which had been fully paid, nor rent for land that, as a result of such payment, had been irrevocably appropriated to its use.  The statute seems to contemplate that when the corporation takes the land, the owner shall have an equal right to have the amount adjudged to him therefor; and leaves each party to the risk of any recovery to which one may be entitled against the other, as a result of the proceedings in error. It follows that the money paid into the court by the railroad company was held by the judge for the use of Zurmehly; that the company had no rightful authority over it; and that it was the duty of the probate judge to pay it over to Zurmehly on demand.  The courts below, therefore, did not err in rendering judgment in his favor." *Meily* v. *Zurmehly*, 23 Ohio St. 626, 631, opinion of the court by Day, J.

In a very late case the supreme court of Ohio re-affirmed the principle which underlies this decision, in the following language: " The rights of the parties are mutual. Whenever the corporation is entitled to take the land, its former owner is equally entitled to the money.  The right to the money accrues *eo instanti* with the right to take the land; otherwise compensation would not be first made. The deposit in court is, in legal effect, for the land-owner's use, and belongs to him as soon as the land becomes the property of the corporation." *Wagner* v. *New York, etc., R. Co.*, 10 Am. & Eng. Ry. Cas. 380, 384.

I can conceive no possible view upon which the payment

of the sum awarded into court, can be regarded as other than an adoption and satisfaction of the award of the commissioners, unless we are to treat the taking of the land as an independent and collateral trespass. But the solemn admission of record of the railway company precludes us from regarding its act of taking possession of the land in this light. The admission is that " in virtue of the payment for defendant, the Evens & Howard Fire Brick Company and the proceedings in this cause, it had taken possession of the property of the Evens & Howard Fire Brick Company described in the plaintiff's petition, and in said report of commissioners, and that it was now in actual possession thereof." These admissions preclude us from viewing the taking possession as a collateral and independent act of trespass, to be redressed, if at all, by the land-owner in a separate action, because it is an assertion on the part of the railway company that they have paid the sum awarded to the clerk of the court for the use of the land-owner, and that, in virtue of this payment, they have taken possession. The land-owner accepts the payment, and concedes to them the possession. How can they make further complaint, exception, or appeal?

Unless we, then, are entirely astray in these views, the proceeding was substantially ended when the railway company paid the award to the clerk of the court, and entered into possession of the land in virtue of such payment. The land-owner did not except to the award; the railway company, by its act, adopted it, and took to itself the fruits of it. It stood, therefore, adopted by both parties, and satisfied by the railway company. The money remained in the hands of the clerk as a mere statutory trustee for the land-owner, this relator, and nothing remained for the court to do touching its disposition, except to order it to be paid to the land-owner, which the court rightfully did. This order was in no sense a judicial act. It was, nevertheless, an act making a final disposition of the rights of the railway com-

pany, and if they had been, in any legal sense, a party aggrieved by it, the court might properly have granted them an appeal under section 3710 of the Revised Statutes. But they were not aggrieved by it, for they had put themselves into the position of consenting to it, and they could not appeal from an order which was the legal consequence of their own voluntary act, any more than a party can appeal from his own confession of judgment, or from his own voluntary non-suit. The appeal was, therefore, improvidently granted. But it does not follow that the relator is entitled to relief by *mandamus*. It is a well understood principle relating to the use of the writ of *mandamus*, that it is never resorted to to enforce a legal right whenever other adequate means of enforcing the same are open to the relator. Thus, it has been laid down that a *mandamus* will not be granted where the party has a remedy by appeal or writ of error. *Blecker* v. *St. Louis Law Commissioner*, 30 Mo. 111. For equal reasons, a *mandamus* ought not to be granted where nothing stands in the way of a party's right but an appeal improvidently awarded, which he is entitled to have dismissed on motion.

Aside from this consideration, an insuperable difficulty presents itself. The circuit court has jurisdiction to grant appeals to this court from its final judgments and orders. If it grant an appeal erroneously, its action is nothing more than an erroneous exercise of jurisdiction. It is not void in the sense that it can be disregarded in a collateral proceeding, but it is valid until it is vacated by the dismissal of the appeal. As soon as the appeal was granted, the jurisdiction of the circuit court was at an end, for every purpose except the amendment of its record. Whether the jurisdiction of this court attached before the return day of the appeal is a question about which the members of the court are not agreed. A majority of the court are of opinion that the jurisdiction of this court, in case of an appeal, does not attach, for the purpose of dismissing the appeal

when improvidently granted, until the commencement of the term to which the appeal is returnable, at least in a cause where the record has not been brought here by the appellant. I am of opinion that we have power to dismiss an appeal erroneously granted whenever the record is brought to us by the respondent, a motion to that effect entered, and the appellant notified of such motion and allowed a reasonable time to file reasons in opposition to the same. But the present case does not call for a discussion of this question; therefore nothing further will be said upon it. Whichever view be correct, it is certain that the jurisdiction of the circuit court is determined by the granting of the appeal, until the order granting it is vacated. This being so, it follows that we are asked in this case to send a *mandamus* to the circuit court commanding the judge and the clerk of that court to act in a matter over which they have no present jurisdiction. This would be contrary to principle. It would introduce confusion into practice, by converting the writ of *mandamus* into a writ of error.

The court is, therefore, of opinion that the demurrer to the return must be overruled and the petition dismissed. It is so ordered. All the judges concur.