FREDERICK D. SNYDER, Appellant, v. SAMUEL D. COWAN, Respondent.

Kansas City Court of Appeals, March 7, and June 13, 1892.

1. **Condemnation Proceedings:** INTEREST ON DEPOSIT: OWNER. The interest accruing from the circuit clerk loaning money deposited with him in a condemnation proceeding under the statute belongs not to the clerk, who is a mere trustee, but to the owner of the money, to-wit, the land-owner, whose it becomes on its deposit with the clerk; and the fact that the land-owner filed exceptions. denying the right to condemn, and refuses to accept the deposit, does not alter the case. [ELLISON, J., *dissenting*.]

2. ———: ———: ———. ELLISON, J., *further dissenting, arguendo:* Where the railway company deposits the appraisement money and takes possession of the land, and, on appeal or exception, an increase is obtained, the land-owner is entitled to interest on the whole award from the date the company took possession.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

*B. R. Vineyard,* for appellant.

(1) When a deposit is made to or with a party in a special character or capacity, then, when the trust shall have terminated, the delivery should be made to the party for whom, or for whose benefit, the deposit may have been made. Story on Bailments [9 Ed.] sec. 109. And this is so, though the deposit may have been made in the name of the party making it. *Utley v. Tolfree,* 77 Mo. 307. (2) The foregoing principle applies in all cases where the deposit is made with one who occupies a trust relation to a third party, whether it be that of an administrator (*State v. Thornton,* 56 Mo. 325), or guardian (*Finney v. State,* 9 Mo. 227), or sheriff (*State to use v. Fitzpatrick,* 64 Mo. 185), or officer holding funds deposited in condemnation proceedings (*Bassett v. Kinney,* 24 Conn. 267), or other trustee (*Bent v. Priest,* 86 Mo. 475). (3) And such trustee, whether officer or other depositary, must account for all interest he may collect or profits he may make out of the trust fund. *Bassett v. Kinney,* 24 Conn. 267, directly in point. *Cruce v. Cruce,* 81 Mo. 684; *Bent v. Priest,* 86 Mo. 482; *Camp v. Camp's Adm'r,* 74 Mo. 192; s. c., 6 Mo. App. 563; Story on Bailments, sec. 99; 1 Perry on Trusts, sec. 429; Brandt on Suretyship, sec. 455. (4) If, then, the circuit clerk is not entitled to retain the interest collected on

money deposited with him as clerk, to whom is he bound to account therefor? We answer that he must account to the one for whose benefit the deposit may be made, and that regardless of the fact as to who may hold the legal title to the money during the time of the deposit. (5) In the exercise of the right of eminent domain for railroad purposes under our statutes, the money deposited upon the coming in of the report of the commissioners is and must be deposited with the clerk by the company "for the party" whose land is being taken, and must be unconditional. 1 R. S. 1889, sec. 2736; *Kanne v. Railroad*, 30 Minn. 423; *Railroad v. Wernwag*, 35 Mo. App. 454; *Gray v. Railroad*, 81 Mo. 135; *State v. Lubke*, 15 Mo. App. 162. (6) The money in the clerk's hands deposited for plaintiff stood as a substitute for the land, the title to which had passed to the company. *Railroad v. Wernwag*, 35 Mo. App. 454; *Gray v. Railroad*, 81 Mo. 135-6.

*Lancaster, Hall & Pike*, for respondent.

(1) The ownership of the principal sum carried with it the interest belonging to it. 24 Conn. 267. (2) The general rule is that if the land-owner "accepts the damages which have been awarded him, this will operate as a waiver and release of errors and estop him from prosecuting an appeal or *certiorari*." Lewis on Eminent Domain, sec. 556. (3) After the return of the verdict by the jury, Snyder lost all right, if any he had, to the deposit in the clerk's hands. Snyder's title to said deposit depended, of course, upon the award made by the commissioners. The new appraisement before the jury was had at his own request, and "it *ipso facto* annulled and set aside the award of the commissioners" (*Railroad v. Cox*, 41 Mo. App. 499-502), and his title to the deposit went with the award.

(4) "Where pending an appeal the party condemning deposits the damages awarded and takes possession, if the owner secures an increase of the award, he should have interest on the whole award from the date of possession," in this state from the report of the commissioners. Lewis on Eminent Domain, sec. 499; *Railroad v. Gammage*, 63 Ga. 604; *Hayes v. Railroad*, 64 Iowa, 753; *Railroad v. Brown*, 13 Neb. 317; *Railroad v. Koblentz*, 21 Ohio St. 334; Pierce on Railroads, 220; *Railroad v. Story*, 96 Mo. 611; *Railroad v. Cox*, 41 Mo. App. 499.

GILL, J.—The plaintiff has appealed from the judgment of the lower court sustaining a demurrer to his petition. Said petition, in effect, states, that on November 10, 1888, plaintiff was the owner of certain lots of land in St. Joseph, Missouri, over which the St. Joseph & Iowa Railroad Company sought to and did locate its road; that, being unable to agree with said railroad as to the proper compensation to be paid, the circuit court, on petition of the railroad company, appointed the three commissioners provided for by the statute to assess such damages; that the commissioners, on December 5, 1888, filed their report wherein they assessed plaintiff's damages for the proposed taking at $9,200; whereupon, in a few days thereafter, the railroad company deposited said amount with defendant Cowan (then and now the clerk of said circuit court) for plaintiff Snyder. On December 8, 1888 (three days after the filing of said report) Snyder, the land-owner, filed his exceptions to the report of the commissioners, wherein he complained of the want of authority in said railroad to condemn his property, and also that the damages awarded by the commissioners were too small. The court overruled the exceptions as to the matter of authority in the corporation to

condemn, but awarded Snyder the right to have a new
assessment of damages by a jury. On a trial before a
jury, February 20, 1890, damages were assessed in
Snyder's favor, at $14,000, and the railroad company
made an effort as if to appeal to the supreme court, but
failing to prosecute the same the supreme court, in
March, 1891, on Snyder's motion, affirmed the said
judgment for $14,000. Thereupon, the company paid
to the clerk (this defendant) enough, with the said
$9,200 already paid, to amount to said judgment with
interest due from its rendition, all of which was then
paid to this plaintiff, Snyder. Plaintiff further alleges,
that, a short time after thus receiving this money from
the defendant clerk, he, for the first time, learned that
said Cowan, while holding said $9,200 for him (Snyder)
had loaned the same and had received as interest accru-
ing thereon the sum of $723.50, and for this sum
plaintiff prosecutes this action.

On this state of facts the circuit court held that
Snyder, the plaintiff, could not recover this interest on
the $9,200 so received by Cowan, the clerk, and the
correctness of this ruling is now here for our decision.

Whatever may be the right of plaintiff Snyder, it
is clear that defendant Cowan, under the facts stated in
the petition, is not entitled to retain the $723.50 in
dispute. He received said $9,200 as a trust fund to be
held for and in behalf of another; and any profit or
reward he may have received for its use belongs either
to this plaintiff or to the St. Joseph & Iowa Railroad
Company. *Cruce v. Cruce*, 81 Mo. 684; *Bent v. Priest*,
86 Mo. 482; *Bassett v. Kinney*, 24 Conn. 267.

It is, too, equally clear that the ownership of the
principal sum, $9,200, while it was in possession of
Cowan, the clerk, determines the right to the interest,
the said $723.50. If then, when the railroad corpora-
tion deposited the $9,200 with the defendant, the title

thereto vested in the plaintiff, then he ought to recover. The question is, to whom did this money belong while thus in the custody of the defendant clerk. I can discover but one reasonable answer to that question. Upon the filing of the commissioners' report and the deposit by the railroad company of the damages thus assessed, the title to such sum passed to and vested in Snyder, the land-owner. This appears a necessary result of our condemnation statute. After providing for the appointment of commissioners to assess damages to the land-owner whose property is sought for railroad purposes, and the report of such commissioners assessing such damages, section 2636, Revised Statutes, 1889, reads: "And thereupon such company shall pay to the said clerk the amount thus assessed *for the party in whose favor such damages have been assessed; and on making such payment it shall be lawful for such company to hold the interest in the property so appropriated for the uses aforesaid;* and, upon failure to pay the assessment aforesaid, the court may, upon motion and notice by the party entitled to such damages, enforce the payment of the same by execution, unless the said company shall, within ten days from the return of such assessment, elect to abandon the proposed appropriation," etc. This law empowers the railroad corporation in the exercise of the delegated powers of eminent domain, and on certain conditions, to enter upon and construct its road over private property. These conditions are payment of the assessed damages, the compensation required by the constitution. Section 21 of the bill of rights declares: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; *and until the same shall be paid to the*

*owner, or into court for the owner*, the property shall not be disturbed or the proprietary rights of the owner therein divested." And when, and only when, these damages, or compensation due the owner, have been paid, is the railroad company authorized to enter upon the property. But when such compensation is paid, either to the land-owner in person, or into the court for him, then the *right of way* becomes vested in the corporation and such *compensation* becomes vested in the land-owner. *State v. Lubke*, 15 Mo. App. 152; *Ring v. Bridge Co.*, 57 Mo. 496; *Mo. Pac. Ry. Co. v. Wernwag*, 35 Mo. App. 449; *Gray v. Railroad*, 81 Mo. 135; *Bassett v. Kinney*, 24 Conn. 267-271; *In matter of Petition Railroad*, 98 N. Y. 12.

This must necessarily be so; for if the railroad company, by depositing the assessed compensation, acquires the right to enter on the land-owner's property and construct its road and at the same time retains its right and title to the deposit, then there has been a clear violation of a right secured by the constitution, to-wit, that he shall not be deprived of his property, or the use thereof, until compensation be paid. He will have lost his land without payment of compensation. This assessment of the commission so paid to the clerk "for the owner" (in the words of the constitution and statute before quoted) is not to be regarded as a *security* merely, but is to be deemed a *payment* "for the party in whose favor such damages have been assessed." *State v. Lubke*, 15 Mo. App. 165, *et seq.* We may say, as did the supreme court in *Gray v. Railroad*, 81 Mo. 135: "Here are mutual rights created which cannot be divested, except by consent of both parties, unless the company, before the money is paid to the clerk, and within ten days after the return of such assessment, shall elect to abandon the appropriation of the land."

That Snyder may have filed exceptions which went so far even as to assail the legal right of the railroad company to condemn land for its purposes can make no difference. Nor is the status of the deposit disturbed because said land-owner refused to accept the $9,200, and demanded more damages. The wishes of the land-owner are not consulted in this character of proceeding. It is one *in invitum*. The law fixes the rights of the parties. It says you must, for this assessment, yield your property for public use. The result is that the appraisement by force of law is set aside to the owner for the land taken from him without his consent. He loses his land and gains the estimated value as set by the commissioners against his will. The title to one and both is fixed, regardless of the land-owner's consent.

It follows then that the circuit court erred in sustaining a demurrer to the petition. The judgment, therefore, ought to be reversed and the cause remanded for a new trial. It is so ordered. SMITH, P. J. concurs; ELLISON, J., dissents.

ELLISON, J. *(dissenting).*—The question presented by this appeal is not whether defendant clerk is the owner of or entitled to the interest received by him, but is plaintiff the owner of it? A correct answer to this can, of course, only be made by determining whether plaintiff was the owner of the principal sum. It is true that under the law, on first appraisement, the railway company paid in the said sum of $9,200 "for the owner," the plaintiff herein. The constitution is that the sum appraised "shall be paid to the owner, *or* into court *for* the owner" of the land. If it be paid to the land-owner, it is his money, of course, but, if it be paid to some third person *for* the owner, it does not necessarily become the owner's money. He may decline

or renounce it. It ought not to be said or thought that the ownership of the money could be forced upon him. Now, in this case, he rejected the appraisement and declined the money. He not only did this, but he resisted and combatted the *power* of the railroad company to proceed in the condemnation of his land at all. As long as the latter point was in issue, the title to the land did not vest in the railroad company, but even if it did I cannot understand how we are to force the ownership of the money onto plaintiff against his will. His land is taken from him against his will, *pro bono publico*, but the public is not concerned in his refusal of the money. If the court had afterwards decided that the railway company had no authority to institute the proceedings, or if the company had confessed the point, the money deposited with the clerk would certainly have belonged to the railway company, and no act of plaintiff would have been necessary to return the money to the company.

When plaintiff refused the appraisement and denied the authority of the company to take his land, the court sustained the authority of the company, but the jury awarded plaintiff $14,000 damages. The jury did not award him the difference between the sum deposited with the clerk and the sum of $14,000. It was not dealt with as a balance due, but this allowance was a judgment in plaintiff's favor for the full amount thereof. It was not affected by the sum in the clerk's hands which plaintiff had rejected. Its payment could have been enforced by execution.

There is another consideration which throws some light on the question: It is the law that where the railway company deposits the appraisement money and takes possession of the land, and, on appeal or exception, an increase is obtained, the land-owner is entitled to interest on the whole award from the date the com-

pany took possession. Pierce on Railroads, 222; Lewis on Eminent Domain, sec. 499; *Evans v. Railroad*, 64 Mo. 455. This being true, how can the money deposited with the clerk and refused by the land-owner, be considered the land-owner's money? If it is his money, he should not be allowed interest on the whole award subsequently made; he should only be allowed interest on the increase in the last award. If, when the money was paid to the clerk *for* him, it amounted to a payment *to* him, then we have the curious feature of a creditor collecting interest on money after it has been paid to him, and the debtor paying interest on money he has not withheld. When the appraisement of the commissioners is paid into "court for the (land) owner," the railway company may, notwithstanding such payment "for the owner," take exception to the amount of the award as being excessive. From this it would seem to be clear that payment or deposit to or with the clerk for the owner does not vest the title to the money in the land-owner.

In the case of *St. L. & S. F. Ry. Co. v. Evans*, 85 Mo. 307, the award by the commissioners was objected to by the railway company as being excessive, notwithstanding it deposited with the clerk, "for the owner," the amount of the award. The land-owner in that case conceived the notion (the same that plaintiff is urging here) that the deposit or payment into court vested the title to the money in him, and the circuit court, coinciding with him, ordered it paid over to him. The supreme court held this to be wrong; that the title was not in him; that the money was in *custodia legis*. Now it would seem to be clear that the money does not become the land-owner's when paid in "for" him, and he refuses to acquiesce in the award. For the much greater reason would it not become his when he not

only rejects the award, but also challenges the very *power* of the company to condemn his land.

- I, therefore, dissent from the opinion herein.